**KEVIN H. KONO, OSB #023528**
kevinkono@dwt.com
**TIM CUNNINGHAM, OSB #100906**
timcunningham@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
Telephone: (503) 241-2300
Facsimile: (503) 778-5299

**FREDERICK B. BURNSIDE, OSB #096617**
fredburnside@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1201 Third Avenue, Suite 2200
Seattle, WA 98101
Telephone: (206) 757-8016
Facsimile: (206) 757-7016

Attorneys for Defendant
Cobalt Mortgage, Inc.


# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br>**Estate of Jeffrey Ron King**<br>**Tisha Renee King**<br><br>**Debtors,**<br><br>**STEPHEN P. ARNOT, Chapter 7 Trustee**<br>**for the Estate of Jeffrey Ron King and Tisha**<br>**Renee King,**<br><br>**PLAINTIFF**,<br><br>v.<br><br>**CHRISTINA CRESWELL, CAL-**<br>**WESTERN RECONVEYANCE**<br>**CORPORATION, AURORA LOAN**<br>**SERVICES, LLC, MICHAEL D. CHEN,**<br>**YUNG-FENG CHOU and COBALT**<br>**MORTGAGE, INC.,**<br><br>**DEFENDANTS**. | Case No. 11-30645-rld7<br><br>Adv. Proc. No. 16-03046-rld<br><br>**DEFENDANT COBALT MORTGAGE,**<br>**INC.'S MOTION TO DISMISS**<br><br>**Oral Argument Requested** |

DEFENDANT COBALT MORTGAGE, INC.'S MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

## L.B.R. 7007-1(A) CERTIFICATE OF COMPLIANCE

Pursuant to L.B.R. 7007-1(a), the undersigned certifies that he has telephonically conferred with Sanford Landress, of attorneys for plaintiff, and that despite a good faith effort to do so, the parties have not been able to resolve the dispute presented in this motion.

## MOTION

Defendant Cobalt Mortgage, Inc. ("Cobalt") moves this court for an Order dismissing plaintiff's Complaint in its entirety, with prejudice, pursuant to Fed. R. Bankr. P. 7012(b) and Fed. R. Civ. P. 12(b)(6).

## MEMORANDUM OF LAW

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff is the newly appointed Chapter 7 Bankruptcy Trustee in the bankruptcy of Jeffrey King and Tisha King ("Debtors"). Debtors' bankruptcy closed nearly three and one-half years ago, on October 30, 2012, and was reopened solely to pursue this case and another like it. Plaintiff bases his claim on a non-judicial foreclosure sale of the Debtors' property at 1452 NW 6th Avenue, Hillsboro, Oregon ("Property"), which occurred over five and one-half years ago— before their bankruptcy. Plaintiff does not dispute Debtors defaulted on their underlying loan or that Debtors received notice of the sale; instead plaintiff seeks to unwind the sale based on an alleged defect in a substitution of trustee. Debtors did not raise this argument before the sale, and the bankruptcy trustee did not raise this argument before the close of Debtors' estate in 2012.

Defendant Aurora Loan Services, LLC ("Aurora") purchased the Property at the foreclosure sale on or about June 11, 2010, and received a Trustee's Deed recorded on July 13, 2010. Defendants Michael D. Chen ("Chen") and Yung-Feng Chou ("Chou") purchased the Property from Aurora on or about August 12, 2010, and defendant Christina Creswell ("Creswell") purchased the Property from Chen and Chou on or about April 24, 2014. In connection with Creswell's purchase, Defendant Cobalt loaned funds to Creswell and became the beneficiary under a deed of trust on the Property securing the loan. Cobalt's loan to Creswell

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

and associated deed of trust—nearly four years and three owners removed from the foreclosure sale plaintiff belatedly challenges—constitutes Cobalt's sole connection to the Property and the sole basis for being named in this suit.

The Court should dismiss plaintiff's Complaint with prejudice as to Cobalt for the following reasons:

*First*, as a matter of law, plaintiff has no claims to pursue because the prior Trustee abandoned the property purportedly at issue here.

*Second*, the completed trustee's sale and issuance of the Trustee's Deed foreclosed and terminated Debtors' interest in the property irrespective of alleged irregularities in connection with the foreclosure sale, and, as a matter of law, plaintiff cannot challenge a completed non-judicial foreclosure following sale of the Property, especially where the Property has been sold to two subsequent bona fide purchasers.

*Third*, plaintiff's inability to challenge the validity of the trustee's sale precludes his invalid encumbrance claim, which hinges on Debtors retaining an ownership interest in the property (*i.e.*, on overturning the long-ago completed non-judicial foreclosure). Even if plaintiff were able to challenge post-trustee sale encumbrances, Cobalt's deed of trust is *per se* valid as a matter of law. And even if Cobalt's deed of trust somehow constituted an invalid encumbrance, plaintiff does not and cannot allege that Cobalt *knowingly* filed an invalid encumbrance.

## II.     FACTUAL BACKGROUND

**Debtors' Note.** Plaintiff alleges that on or about February 1, 2006, Debtors purchased real property located in Washington County, Oregon. Compl. ¶ 4. On or about February 1, 2006, Debtors executed and delivered a promissory note in the amount of $148,000 in favor of Homecomings Financial Network, Inc. (the "Note"). Compl. ¶ 5.

**Debtors' Trust Deed.** The Note was secured by a residential deed of trust ("Trust Deed"). Compl. ¶ 6. The Trust Deed is a four-party document, executed by Debtors as "Borrower," that identifies Mortgage Electronic Registration System ("MERS") as "beneficiary"

Page 2 - DEFENDANT COBALT MORTGAGE, INC.'S MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

("solely as a nominee for Lender and Lender's successors and assigns"), Homecoming Financial Network, Inc. as the "Lender," and First American Title as "Trustee." *See* Compl. ¶ 6; *see also* Kono Dec., Exhibit 1 (copy of the Trust Deed).[1]

**Debtors' Default.** Plaintiff does not dispute in his complaint that the Debtors defaulted on their payment obligations under the Note, and the recorded documents reflect as much: in or around August 2009, Debtors became delinquent on their Note payments, in violation of Section 1 of the Deed of Trust. Kono Dec., Exhibit 2 (copy of the Notice of Default and Election to Sell); Kono Dec. Ex. 1.

**Successor Trustee and Trustee's Sale.** On or about August 7, 2009, MERS acting as nominee for the note holder, executed a substitution of trustee, naming defendant Cal-Western Reconveyance Corporation ("Cal-Western") as successor trustee. Compl. ¶ 8; *see also* Kono Dec., Ex. 3 (copy of the Substitution of Trustee). Cal-Western then recorded a Notice of Default and Election to Sell, Compl. ¶ 10, Kono Dec. Ex. 2, and recorded pre-sale affidavits. Complaint ¶ 11. Cal-Western recorded a Trustee's Deed on June 11, 2010. Complaint ¶ 12; Kono Dec. Exhibit 4 (copy of the Trustee's Deed). The Trustee's Deed named Aurora Loan Services LLC

---

[1] Although the Trust Deed is not attached to the Complaint, the Complaint necessarily relies on the Trust Deed, and there can be no reasonable dispute as to the authenticity of the copy of the Trust Deed submitted in connection with this motion. Accordingly, the Court can consider the Trust Deed in ruling on the motion to dismiss, and Cobalt respectfully requests that the Court do so here. *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013). Cobalt also submits the Substitution of Trustee, the Notice of Default and Election to Sell, the Trustee's Deed, the various deeds conveying title among the owner-defendants, and the Trust Deed in favor of Cobalt, all of which are relied on in the Complaint. Cobalt further requests that the Court take judicial notice of those instruments (including the Trust Deed) because they are recorded documents in the public record whose accuracy cannot reasonably be questioned. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (noting that a court may take judicial notice of matters of public record); *Cotrell v. Central Mortg. Co.*, No. 3:15-cv-0084-AA, 2015 WL 4623510 at *2 (D. Or. July 30, 2015) (judicially noticing recorded documents where plaintiff claimed that MERS's involvement invalidated a nonjudicial foreclosure sale); *Morkal v. Fed. Home Loan Mortg. Corp.*, No. 6:12-CV-01401-AA, 2014 WL 2041364, at *2 (D. Or. May 8, 2014) (same).

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

DWT 29392308v8 0083991-000034

Case 16-03046-rld    Doc 8    Filed 04/27/16

("Aurora") as grantee. *Id.* The Complaint does not allege Debtors raised any objection to the appointment of the successor trustee or to the trustee's sale.

**Sale to Michael Chen / Yung-Feng Chou.** On or about August 12, 2010, Chen and Chou purchased the Property from Aurora for $121,600.00. Compl. ¶ 13; Kono Dec. Exhibit 5 (copy of the special warranty deed to Chen and Chou).

**Sale to Christina Creswell.** On or about April 24, 2014, Creswell purchased the Property from Chen and Chou for $185,000. Compl. ¶ 14; Kono Dec. Exhibit 6 (copy of the statutory warranty deed to Creswell).

**Creswell's Trust Deed in favor of Cobalt.** In connection with Creswell's purchase of the Property, on or about April 24, 2014, to secure a Note in favor of Cobalt, Creswell executed a residential deed of trust under which Cobalt is the beneficiary ("Cobalt Trust Deed"). Compl. ¶ 15; Kono Dec. Exhibit 7 (copy of the Cobalt Trust Deed). All claims against Cobalt stem from the Cobalt Trust Deed.

**Debtors' Bankruptcy.** On January 28, 2011, the Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code. Compl. ¶ 1. Peter C. McKittrick was appointed the Chapter 7 Trustee. Compl. ¶ 2. Debtors listed the prior non-judicial foreclosure on their statement of financial affairs. Case No. 11-30645-rld7 ("Bankr."), Dkt. No. 1 at . Plaintiff does not allege that Mr. McKittrick pursued the Property as an asset during the bankruptcy, or otherwise challenged the trustee's sale. To the contrary, on April 4, 2011, now Judge McKittrick filed a report with this court stating he "made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law." Bankr. Dkt. No. 13; *see also* Bankr. Dkt. No. 20 (amended report stating "Trustee reports that diligent inquiry has been made into the whereabouts of property belonging to the estate, and is in the process of determining whether there is any value to property of the estate that is over and above exemptions claimed by the debtor(s) and will provide a meaningful distribution to creditors[.]"). On October 10, 2012,

Page 4 - DEFENDANT COBALT MORTGAGE, INC.'S MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

DWT 29392308v8 0083991-000034

Case 16-03046-rld    Doc 8    Filed 04/27/16

Judge McKittrick filed a Notice of Intent to Abandon Potential undisclosed assets, in which he stated the intent "to abandon … [p]otential claims to undisclosed assets and fraudulent transfers" because "[s]uch property is burdensome to the estate" and "[t]here is no equity for the estate in such property." Bankr. Dkt. No. 47. Judge McKittrick further stated "Trustee believes claims to potential assets are speculative and legally problematic, and does not intend to pursue claims." Bankr. Dkt. No. 47. The bankruptcy was closed on October 30, 2012. Compl. ¶ 3; Bankr. Dkt. No. 50. On March 4, 2016, the case was reopened and plaintiff was appointed as Chapter 7 Trustee. Compl. ¶ 3.

## III.    PROCEDURAL BACKGROUND

Plaintiff filed this case in Multnomah County Circuit Court on March 17, 2016. *See* Notice of Removal (Dkt. No. 1), Ex. 1. Cobalt removed the case to this Court on the basis of "related to" bankruptcy jurisdiction under 28 U.S.C. § 1334(b). Notice of Removal (Dkt. No. 1). Plaintiff has moved to remand the case to state court. (Dkt. No. 4.)

## IV.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2)[2] requires a plaintiff to provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant[s] fair notice of what the … claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 1267 S.Ct. 1955 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99 (1957)). The Court should dismiss under Federal Rule of Civil Procedure 12(b)(6) claims that fail to meet this standard.[3] While these Rules do not require heightened fact pleading, they do require that a complaint contain sufficient factual allegations,

---

[2] Fed. R. Civ. P. 8 "applies in bankruptcy proceedings." Fed. R. Bankr. P. 7008.

[3] Fed. R. Civ. P. 12(b)(6) "applies in adversary proceedings." Fed. R. Bankr. P. 7012; *see also In re McCory*, 446 B.R. 453, 454 & n.1 (Bankr. D. Or. 2011) (applying Fed. R. Civ. P. 12 standards in motion to dismiss, where Fed. R. Civ. P. 12 was made applicable by Fed. R. Bankr. P. 7012).

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

DWT 29392308v8 0083991-000034

Case 16-03046-rld    Doc 8    Filed 04/27/16

which, accepted as true, state a claim for relief "'that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (quoting *Twombly*, 550 U.S. at 570). Where, however, the plaintiff fails to "nudge[] [her] claims across the line from conceivable to plausible, [her] complaint must be dismissed." *Twombly*, 550 U.S. at 570. Therefore, to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide more than just "labels and conclusions;" rather, she must provide the grounds of her entitlement to relief. *Twombly*, 550 U.S. at 555 ("[F]ormulaic recitation of the elements of a cause of action will not do."). "A Rule 12(b)(6) dismissal may be based either on a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted).

Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678-79 ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice…. [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."). Indeed, while legal conclusions may establish the complaint's basic framework, "they must be supported by factual allegations." *Id*. at 679. Finally, where it is clear amendment would be futile, the court may dismiss a complaint without leave to amend. *See Havas v. Thornton*, 609 F.2d 372 (9th Cir. 1979).

On a motion to dismiss, the Court may consider documents relied on in a complaint without converting the motion to one for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). Defendants can rely on documents outside the pleadings if their authenticity is uncontested and the complaint "necessarily relies on them." *Lee*, 250 F.3d at 688; *see also* Footnote 1, *supra*. Similarly, the Court may take judicial notice of publicly recorded documents without converting the motion into one for summary judgment. *Shaw v. Hawn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995); *see also* Footnote 2, *supra*.

DWT 29392308v8 0083991-000034

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

# V.    ARGUMENT

The Court should dismiss plaintiff's claims because plaintiff has no claims to pursue in light of the prior Trustee's abandonment of the property.  Even if the property (including plaintiff's claims) were not irrevocably abandoned, the Court should dismiss plaintiff's claims because even when taken as true, the allegations in the Complaint fail to state a claim on which relief can be granted.  Cobalt's only involvement in this case is the Cobalt Trust Deed, which was recorded nearly *four years* after the Debtors' Property was sold at a trustee's sale and conveyed to the purchaser, Aurora, via a Trustee's Deed, and after the Property later was *twice* sold to bona fide purchasers for value.  Plaintiff is precluded from challenging the validity of the trustee's sale, which terminated Debtors' interest in the Property—especially where plaintiff does not dispute the Debtors were in default and received notice of the trustee's sale, and where the Property has been sold to bona fide purchasers.  Plaintiff's claim for invalid encumbrance similarly fails because it relies entirely on the incorrect notion that Debtors retained an ownership interest in the property after the trustee's sale and issuance of the Trustee's Deed, which, as a matter of law, terminated and foreclosed Debtors' interest.  Even if Debtors *could* have an interest following the trustee's sale, two subsequent bona-fide purchasers have purchased the Property, making the recitals in the Trustee's Deed conclusive as a matter of law and rendering Cobalt's "encumbrance" valid.[4]

## A.    Plaintiff claims should be dismissed because the predecessor Trustee abandoned them.

Under 11 U.S.C. § 554(c), "[u]nless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor…."  "Section 554(c) deems abandoned to the debtor any scheduled

---

[4] Though plaintiff brings a claim for trespass against other defendants, plaintiff's only claims against Cobalt are for declaratory judgment and invalid encumbrance.  *See* Compl. ¶¶ 26-34 (omitting Cobalt from the trespass claim).

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

property of the estate that is unadministered at the close of the case." *In re Adair*, 253 B.R. 85, 88 (9th Cir. B.A.P. 2000). As a general rule, "abandonment is irrevocable, even if it is subsequently discovered that the abandoned property had greater value than previously believed." *Id.* (citation omitted); *see also In re Bast*, 366 B.R. 237, 240 (Bankr. S.D. Fla. 2007) ("Property which is not sold or otherwise administered during the course of a bankruptcy proceeding is deemed abandoned upon the closing of the bankruptcy proceeding."). The exception to the irrevocability of abandonment is where "the trustee is misled by false or incomplete information." *Id.* at 89. There is no allegation in the Complaint that even remotely suggests Judge McKittrick was misled in any way. To the contrary, the bankruptcy record shows Judge McKittrick reported a diligent inquiry and determined "potential assets are speculative and legally problematic," and therefore he decided not to pursue any claims. Bankr. Dkt. No. 47. The property has been irrevocably abandoned, and plaintiff cannot now assert claims based on the abandoned property.

### B. Plaintiff is precluded from challenging the validity of the trustee's sale.

Plaintiff's first claim for relief seeks declaratory relief that "Cal-Western's purported non-judicial foreclosure of the Trust Deed [is] void," the deeds to Aurora, Chen and Chou, and Creswell, "conveyed no title or interest," and the Cobalt Trust Deed is "of no effect on the title to" the property. Compl. ¶¶ 21-25; *see also* Prayer at 1.[5] Essentially, plaintiff requests that every transaction following the challenged appointment of successor trustee is null and void, regardless whether the subsequent purchasers knew, or could have known, about the alleged infirmity in the appointment of the successor trustee. The Court should dismiss plaintiff's first claim for relief for failure to state a claim.

---

[5] In the body of his complaint, plaintiff erroneously refers to a trust deed from Creswell to "Mortgage Express." Compl. ¶ 25. "Mortgage Express" has no involvement with the Property, and the prayer makes clear that plaintiff seeks to invalidate the Cobalt Trust Deed. Complaint, Prayer at 1.

DWT 29392308v8 0083991-000034

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

The lynchpin of plaintiff's first claim is the allegation that MERS was never a "beneficiary" of the Trust Deed, and thus lacked authority under ORS 86.713(3) to appoint Cal-Western as the successor trustee. Compl. ¶¶ 7-8, 17. As plaintiff would have it, because MERS lacked authority to appoint the successor trustee, every subsequent transaction concerning the Property, no matter how far removed from the trustee's sale, is null and void. Compl. ¶¶ 17-25. But because plaintiff does not dispute Debtors' default, does not allege that they lacked notice of the trustee's sale, and does not allege that they challenged the propriety or validity of the foreclosure sale before completion, the issuance of the Trustee's Deed foreclosed and terminated Debtors' interest in the Property, precluding plaintiff's claim as a matter of law. Even if plaintiff *had* made those allegations, the claim would still fail because the Property has been purchased by subsequent good faith purchasers, terminating any interest of plaintiff as a matter of law.

### 1. Post-trustee sale challenges to the trustee's sale are unavailable under Oregon law where the property has been transferred to good faith purchasers.

The Oregon Trust Deed Act ("OTDA"), ORS 86.705 *et. seq.*, is a "well-coordinated statutory scheme to protect grantors from the unauthorized foreclosure and wrongful sale of property, while at the same time providing creditors with a quick and efficient remedy against a defaulting grantor." *Staffordshire Inv., Inc. v. Cal-Western Reconveyance Corp.*, 209 Or. App. 528, 542, 149 P.3d 150 (2006). As part of this balance, ORS 86.797(1) (formerly ORS 86.770(1)) provides that the trustee's sale "forecloses and terminates the interest in the property that belongs to a person to which notice of the sale was given.... A person whose interest the trustee's sale foreclosed and terminated may not redeem the property from the purchaser at the trustee's sale."

Working in concert with ORS 86.797, ORS 86.803 provides that "[w]hen the trustee's deed is recorded in the deed records of the county or counties where the property described in the deed is situated, the recitals contained in the deed and in the affidavits required under ORS 86.774 (3) and (4) shall be prima facie evidence in any court of the truth of the matters set forth

Page 9 - DEFENDANT COBALT MORTGAGE, INC.'S MOTION TO DISMISS

therein, but *the recitals shall be conclusive in favor of a purchaser for value in good faith relying upon them.*" (Emphasis added). When a property sold at a trustee's sale is later sold to a purchaser for value in good faith, the recitals in the trustee's deed are *conclusive*, ORS 86.803, and when the recitals are *conclusive*, the trustee's sale "forecloses and terminates the interest in the property that belongs to a person to which notice of the sale was given." ORS 86.797(1). These two statutes reflect a fair and reasoned legislative balance between the opportunity for a borrower whose property is being foreclosed to challenge the foreclosure process and the need for finality and the ability of subsequent purchasers—strangers to the foreclosure proceedings—to rely on that finality.

Under plaintiff's allegations (and as reflected in the public record), there are *two* good faith purchasers after the trustee's sale. Plaintiff alleges that after the recording of the Trustee's Deed, Aurora, the foreclosure sale purchaser, sold the Property to Chen and Chou, and then Chen and Chou sold the Property to Creswell. Compl. ¶¶ 13, 14. The Trustee's Deed recites that MERS was the beneficiary of the trust deed foreclosed on, the Debtors were in default on the obligations secured by the trust deed, Cal-Western was the trustee, Debtors were provided notice of the default and the sale, and the owner and holder of the obligations exercised the power of sale. Kono Dec. Ex. 4 As a result, the sale was conducted, the property was sold, and through the Trustee's Deed, the trustee conveyed "*all interest which the grantor had or had the power to convey at the time of grantor's execution of said trust deed.*" Kono Dec. Ex. 4 (emphasis added). The sales first to Chen and Chou, and then to Creswell, render the recitals in the Trustee's Deed "conclusive" as a matter of law, and therefore bar plaintiff's request for a declaration "unwinding" the foreclosure sale and all subsequent transactions ORS 86.803. Accordingly, Debtors' interest was "foreclose[d] and terminate[d]" notwithstanding any alleged irregularities in the foreclosure process. ORS 86.797(1).

The OTDA makes clear that plaintiff is unable to challenge a completed non-judicial foreclosure where Debtors were in default and had notice of the sale. But even if plaintiff is

Page 10 - DEFENDANT COBALT MORTGAGE, INC.'S MOTION TO DISMISS

correct, and *some* challenge is still available to plaintiff, plaintiff's remedy is *not* unwinding the

foreclosure and every subsequent transaction to the detriment of Chen and Chou, and Creswell

and Cobalt—parties who had absolutely nothing to do with the underlying foreclosure plaintiff

complains of, and who relied on the finality provided in the OTDA.[6] Plaintiff's Complaint,

however, does not present the question whether plaintiff may have a cause of action for

damages—or any other form of relief—if plaintiff were able to prove his factual allegations

related to the foreclosure. In any event, plaintiff could not assert any such claim for relief

against Cobalt (which had no involvement in the foreclosure), and the Court need only conclude

that plaintiff cannot unwind a completed foreclosure to the detriment of later, innocent third-

parties like Cobalt to dismiss plaintiff's declaratory judgment claim against Cobalt.

> ## 2. Case law supports the conclusion that plaintiff's declaratory relief claim is barred.

This plain statutory analysis is consistent with the law as interpreted in this district and by

Oregon state courts. In *Mikityuk v. Northwest Trustee Services, Inc.*, Judge Panner considered

and rejected a slight variation on the claim plaintiff makes here. 952 F. Supp. 2d 958, 962 (D.

Or. 2013). In *Mikityuk*, plaintiff alleged that "because MERS was not a valid beneficiary under

the OTDA, any transfers or assignments made by MERS 'must be deemed void.'" *Id. Mikityuk*

systematically addressed the argument and, based on the text and context of the OTDA,

concluded that where the plaintiff does not dispute default, and does not dispute notice of the

trustee's sale, the plaintiff is barred from challenging the validity of a non-judicial foreclosure

after the trustee's sale. *Id.* at 966 ("Anyone wishing to challenge any aspect of a non-judicial

foreclosure sale must do so before the trustee's sale or, at the latest, before the recording of the

trustee's deed.").

Crucial to the court's reasoning in *Mikityuk* was that the OTDA provides grantors with

ample opportunity to contest a purportedly invalid sale. *Id.* at 965 (describing notice procedures

---

[6] *See* discussion in Section A.2, *infra*, regarding the rights of a grantor who did not receive notice
prior to a trustee's sale.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

DWT 29392308v8 0083991-000034

and content of notices). These provisions "reflect the legislature's intent to protect the grantor against the unauthorized loss of its property and to give the grantor sufficient opportunity to cure any default." *Id.* (quoting *Staffordshire*, 209 Or App at 542). In contrast, the legislature "included other provisions more favorable to lenders" because "a competing purpose of the OTDA was to provide creditors with a quick and efficient remedy against a defaulting grantor." *Id.* at 965-66 (citation and quotation marks omitted). An important component of this "quick and efficient remedy" was certainty. In fact, "protecting grantors from the unauthorized foreclosure and wrongful sale of property was, at least in the view of the legislature, secondary to the need for certainty and finality." *Id.* at 966 (citation and quotation marks omitted). This need is reflected in the provisions of the OTDA providing that once recorded, the recitals in a trustee's deed are prima facie evidence of the matters set forth therein, and conclusive in favor of a bona fide purchaser. *Id.* (citing *former* ORS 86.780 (later renumbered as ORS 86.803)). The court concluded that these presumptions are not "as harsh when viewed against the provisions which . . . the legislature included to protect the grantor against an unlawful foreclosure." *Id.* at 966. Finally, the court noted that even when a grantor fails to receive notice of a sale, the remedy *is not to simply declare the sale void. Id.* at 967. Instead, the omitted party is provided a right of action for damages or a right of redemption. *Id.*

These considerations led the *Mikityuk* court to conclude that absent an allegation disputing default or disputing notice, grantors must raise any challenges to non-judicial foreclosure proceedings *before* the trustee's sale occurs and the grantor's interest is "foreclosed and terminated" pursuant to former ORS 86.770(1). *Id.* at 970. Any other rule would "encourage grantors who receive notice of a sale to sit on their rights" and would "cloud every completed trustee's sale, even sales conducted years ago." *Id.* at 970, 969. As the more than a dozen cases in the below footnote confirm, since *Mikityuk*, courts within the District of Oregon consistently have held that a plaintiff who does not dispute default or notice, but alleges defects

DWT 29392308v8 0083991-000034

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

in the non-judicial foreclosure process attributable to MERS, is barred from challenging the

validity of a completed non-judicial foreclosure.[7]

<hr/>

[7] *Cotrell v. Central Mort. Co.*, No. 3:15-cv-0084-AA, 2015 WL 4623510 at *2 (D. Or. July 30, 2015) ("Courts within this district have consistently found that the OTDA precludes challenges to completed non-judicial foreclosures where timely statutory notice was served, even where the plaintiff asserts procedural defects due to MERS' involvement."); *Morris v. Nw. Tr. Servs., Inc.*, No. 3:12-CV-01183-HU, 2014 WL 5494888, at *4 (D. Or. Oct. 30, 2014) ("*Mikityuk* and other cases in this district have consistently held that post-sale challenges on the grounds that a deed of trust names an improper beneficiary are barred."); *Morkal v. Fed. Home Loan Mortgage Corp.*, No. 6:12-CV-01401-AA, 2014 WL 2041364, at *4 (D. Or. May 8, 2014) ("As in *Mikityuk*, plaintiff here failed to challenge the non-judicial foreclosure proceeding before the sale occurred and the trustee's deed was recorded."); *Liu v. Nw. Tr. Servs., Inc.*, No. 3:12-CV-00484-BR, 2014 WL 657000, at *3 (D. Or. Feb. 19, 2014) ("[T]his Court, other courts in this District, and Oregon state courts have held § 86.770 bars rescission of a foreclosure sale when a borrower has received the notice required under § 86.740 and the property is sold to a bona fide purchaser."); *Baricevic v. Mortg. Elec. Reg. Servs., Inc.*, No. 3:13-cv-01503-MO, 2014 WL 297091 at *2 (D. Or. Jan. 24, 2014) ("Federal courts in this district have held that Or.Rev.Stat. § 86.770 bars a grantor from challenging a nonjudicial foreclosure proceeding after the trustee's sale has taken place and the trustee's deed of sale has been recorded."); *Collette v. Sutherland*, Civ. No. 6:11-cv-06315-TC, 2014 WL 203922 at *1-*2 (D. Or. Jan. 15, 2014) ("[P]laintiff does not dispute that he was in default … [or] allege improper service of the Notice or any failure to provide him with information pertaining to his default or right to cure said default. Consequently, the completed trustee's sale bars plaintiff's challenge." (citations omitted)); *Roach v. Snook*, No. 1:14-CV-00583-PA, 2014 WL 7467000, at *4 (D. Or. Jan. 5, 2014) ("Plaintiff's challenge to the completed nonjudicial foreclosure is barred by ORS 86.797."); *D'Ambrosio v. Sterling Sav. Bank*, No. 3:12-CV-01826-BR, 2013 WL 5744730, at *6 (D. Or. Oct. 22, 2013) (barring post non-judicial foreclosure claim for quiet title); *Woods v. US Bank Nat'l Assoc.*, No. 3:12-CV-01052-BR, 2013 WL 5592962 at *4-*5 (D. Or. Oct. 10, 2013); *Hart v. Pac. Trust Bank*, No. 1:12-cv-705-PA, 2013 WL 4829172 at *2 (D. Or. Sep. 9, 2013) ("Although plaintiff here had sufficient time to raise any of the current challenges before the sale, she chose instead to raise such challenges after the trustee's sale and recording of the trustee's deed. Plaintiff's challenges to the trustee's sale are barred, as plaintiff's interest in the property was 'foreclosed and terminated.'"); *Chen v. Bank of Am., N.A.*, No. 3:12-CV-194-PA, 2013 WL 3929854, at *2 (D. Or. July 25, 2013) ("Plaintiff's challenges to the trustee's sale are barred, as plaintiff's interest in the property was 'foreclosed and terminated.'"); *Nedelku v. Wells Fargo Bank, N.A.*, No. 3:12-CV-651-PA, 2013 WL 3808795, at *2 (D. Or. July 19, 2013) ("[P]laintiffs' challenges to the non-judicial foreclosure sale here are barred. As plaintiffs received advance notice of the sale, their interest in the property was 'foreclosed and terminated.'"); *Roisland v. Cobalt Bank, FSB*, 989 F. Supp. 2d 1095, 1106 (D. Or. 2013) ("The grantor's remedy for OTDA violations in connection with the enforcement of a deed of trust is to raise any defects in the trustee's power of sale upon receipt of notice, prior to the trustee's sale and the recordation of the trustee's deed."); *Tanner v. Wells Fargo Bank N.A.*, 2016 WL 1060227 at *4 (D. Or. March 11, 2016) ("The Court adopts the reasoning of *Mikityuk*, *Chen*, and other similar cases in this District and in Oregon courts. * * * Plaintiff received notice of the foreclosure sale within the time required under the OTDA, the property was sold to a bona fide purchaser, and the sale of the property was recorded. The Court concludes on this record that Plaintiff's claim is barred under § 86.797(1) and, therefore, grants Defendant's Motion for Judgment on the Pleadings."). *But cf. Paatalo v. JPMorgan Chase Bank*, 2015 WL 7015317, at *6 (D. Or. 2015) (distinguishing *Mikityuk* where

Page 13 - DEFENDANT COBALT MORTGAGE, INC.'S MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Similarly, the Ninth Circuit, in an unpublished disposition, relied on the logic of *Mikityuk* to hold that "[b]ased upon the plain language [of] section 86.770(1), the completed trustee sale 'foreclosed and terminated' [plaintiff's] interests in the Property, such that [plaintiff] is now precluded from challenging the sale." *Angels Alliance Grp., LLC v. ReconTrust Co., NA*, 617 Fed. Appx. 740, 2015 WL 4071535 at *2 (unpublished) (9th Cir. July 6, 2015).[8] In *Angels Alliance*, the plaintiff—like plaintiff here—alleged that because "MERS could not be designated as a beneficiary of a deed of trust under Oregon law … MERS could not appoint ReconTrust as successor trustee … and the recorded documents memorializing [this] were without effect." *Id.* at *1. The court disagreed, finding that like in *Mikityuk*, the plaintiff's "post-sale arguments are based largely on MERS's role as a named beneficiary, and such challenges are not available after the sale takes place." *Id.* at *2.

The conclusion in *Mikityuk*, its progeny, and *Angels Alliance* that a grantor's remedy for a purportedly wrongful foreclosure must be exercised pre-sale is consistent with the Oregon Supreme Court's discussion of the OTDA in *Brandrup v. ReconTrust*, 353 Or. 668, 677-78, 303 P.3d 301 (2013). In *Brandrup*, the Oregon Supreme Court considered various certified questions related to MERS's ability to act as a beneficiary under the OTDA. When framing the discussion, the court explained that:

> [T]he OTDA prescribes notice requirements that protect trust deed grantors from unauthorized nonjudicial foreclosures and sales of property. Among other things, a trustee is required to provide to the grantor and other interested parties at least 120 days' advance notice of the trustee's sale. ORS 86.740(1). Although judicial involvement is not required to complete a foreclosure by advertisement and sale, the 120–day advance notice period gives a grantor time to seek judicial intervention in certain circumstances, as plaintiffs in these cases have done.

---

an "intervening change in law" unrelated to the OTDA altered the underlying basis of plaintiff's claim).

[8] Cobalt acknowledges that an unpublished opinion is not binding, 9th Cir. Rule 36-3, but the court may consider it for its persuasive value. *See United States v. Alvarado Martinez*, 556 F.3d 732, 735 (9th Cir. 2009) (treating post January 1, 2007 unpublished decisions as persuasive authority); *Providence Health Plan v. Skyles*, No. 03:11-cv-06273, 2012 WL 2259161 at *4 (D. Or. Apr. 9, 2012) (same).

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*Id.* Though *Brandrup* considered a *pre-sale challenge*, and does not control post-sale challenges, *see Chen*, 2013 WL 3929854 at *2, its treatment of the OTDA demonstrates the "120-day advance notice period" protects grantors from "unauthorized nonjudicial foreclosures" by allowing them "time to seek judicial intervention." After that time has expired, the opportunity to seek such intervention is lost.

None of the authority above expressly considered the effect of subsequent good faith purchasers (let alone *two* subsequent good faith purchasers), where the conclusive presumption provision of ORS 86.803 makes all the more clear that a borrower may not challenge a completed foreclosure where the rights of innocent third parties would be affected. *Cf. Woods*, 2013 WL 5592962 ("Plaintiffs admit they received notice of the foreclosure sale within the time required under the OTDA, that the property was sold to a *bona fide* purchaser, and that the sale of the property was recorded before Plaintiffs filed this action seeking to set aside the sale. The Court concludes on this record that Plaintiff's claim is barred under § 86.770(1)."); *Tanner*, 2016 WL 1060227 ("Plaintiff received notice of the foreclosure sale within the time required under the OTDA, the property was sold to a *bona fide* purchaser, and the sale of the property was recorded. The Court concludes on this record that Plaintiff's claim is barred under § 86.797(1)."). Recent authority from the Oregon Court of Appeals, however, supports that the presence of a good faith purchaser conclusively bars a post-trustee's sale challenge to a foreclosure. In *Wolf v. GMAC Mortg., LLC*, 276 Or App 541, 2016 WL 640808, at *4 n.4 (2016), the Oregon Court of Appeals disagreed with the analysis of *Mikityuk* and its progeny as applied to a challenge against *the holder of the trustee's deed.* [9] Implicit in the court's analysis, however, is the recognition

[9] Even though *Wolf* supports Cobalt in this case because there are two intervening good faith purchasers, Cobalt expects plaintiff to focus on the portion of *Wolf* that disagrees with *Mikityuk* and holds, on the different facts of that case, that a borrower may challenge a completed foreclosure. This Court, however, need not follow *Wolf* at all if there is convincing evidence that the Oregon Supreme Court would decide the issue differently. *See Vestar Development II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001). The Oregon Supreme Court would likely disagree with *Wolf* and conclude that a borrower with notice of non-judicial foreclosure proceedings cannot challenge a completed foreclosure because the court has already stated that one purpose of the OTDA's notice provisions is to protect borrowers from unauthorized

Page 15 - DEFENDANT COBALT MORTGAGE, INC.'S MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Case 16-03046-rld Doc 8 Filed 04/27/16

that where there *is* a good faith purchaser, the recitals in the Trustee's Deed are conclusive, foreclosing the prior interest.

In *Wolf*, the former property owner challenged the trustee's sale of his property based on MERS's involvement, arguing—like plaintiff here—that the trustee's sale was invalid because MERS, which was not a legal "beneficiary" under the OTDA, lacked authority to appoint the successor trustee. *Wolf*, 2016 WL 640808 at *2. The Oregon Court of Appeals disagreed with the analysis in *Mikityuk*, focusing on the language in ORS 86.803 (former ORS 86.780 (2011)):

> The presumption that arises under *former* ORS 86.780 (2011) is merely a rebuttable presumption if the purchaser is not a bona fide purchaser (BFP). That statute provides that the recitals contained within the deed "shall be prima facie evidence in any court of the truth of the matters set forth therein" but "shall be conclusive in favor of a purchaser for value in good faith relying upon them." *Former* ORS 86.780 (2011). Thus, if the purchaser is *not* a BFP, the statute provides only a rebuttable presumption. * * * The existence of a rebuttable presumption suggests that the legislature, in fact, contemplated challenges to the *prima facie* evidence contained in the trustee's deed, if not the validity of the trustee's deed itself.

*Id.* at *3. The direct corollary of the court's analysis is that if the purchaser *is* a "BFP," there is no "rebuttable presumption" and the recitals are conclusive, foreclosing any interest the former owner may have had.

Plaintiff's claim seeking to unwind the trustee's sale fails because plaintiff does not allege that Debtors were not in default and does not allege that Debtors did not receive notice of the trustee's sale. Plaintiff's only attack on the validity of the sale is that MERS's appointment

---

foreclosures and to provide an opportunity for the borrower to seek judicial intervention *before* foreclosure. *Brandrup*, 353 Or. at 677. That purpose is rendered irrelevant if a borrower with notice nonetheless could wait until after foreclosure to raise a challenge. Notably, courts within this district have continued to apply *Mikityuk* even after publication of *Wolf*, and even where there were not good faith purchasers following the trustee's deed. *Wolf* was published on February 18, 2016, and on March 11, 2016, Judge Brown issued her decision in *Tanner*, expressly relying on *Mikityuk* and barring a post-foreclosure claim by a borrower who did not contest default and who had notice of the sale. *Tanner*, 2016 WL 1060227 at *4 (D. Or. Mar. 11, 2016) ("The Court adopts the reasoning of *Mikityuk*, *Chen*, and other similar cases in this District and in Oregon courts. * * * Plaintiff received notice of the foreclosure sale within the time required under the OTDA, the property was sold to a bona fide purchaser, and the sale of the property was recorded. The Court concludes on this record that Plaintiff's claim is barred under § 86.797(1) and, therefore, grants Defendant's Motion for Judgment on the Pleadings.").

Page 16 - DEFENDANT COBALT MORTGAGE, INC.'S MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax
DWT 29392308v8 0083991-000034
Case 16-03046-rld   Doc 8   Filed 04/27/16

of the successor trustee caused every subsequent transaction to be a nullity. Compl. ¶¶ 17-25.

But Debtors' interest in the property has been "foreclosed and terminated" under ORS 86.797(1)

and ORS 86.803, and, as a matter of law, plaintiff cannot now attack the sale's validity—

especially where the property has twice passed to good faith purchasers. As in *Mikityuk* and its

progeny, the time for Debtors to raise their objection was when Debtors received notice of the

impending trustee sale, not five and one-half years later, after Debtors have been through

bankruptcy and the Property has been sold first to Chen and Chou, and second to Ms. Creswell.

"[G]ranting plaintiffs their requested relief would gut the OTDA," *Mikityuk*, 952 F. Supp. 2d at

969, and leave Creswell with a loan obligation but no Property, and render Cobalt a lender with

no security, even though neither had anything to do with the challenged foreclosure.

ORS 86.797(1) and ORS 86.803 bar that result as a matter of law, and the Court should dismiss

plaintiff's first claim for declaratory relief.

     **C.    Plaintiff's invalid encumbrance claim fails as a matter of law.**

     Plaintiff's claim for invalid encumbrance under ORS 205.470, Compl. ¶ 36, fails on

multiple levels. ORS 205.470 provides, in full, that:

> Any person who knowingly files, or directs another to file, an invalid claim of
> encumbrance shall be liable to the owner of the property bound by the claim of
> encumbrance for a sum of not less than $5,000 or for actual damages caused by
> the filing of the claim of encumbrance, whichever is greater, together with costs
> and reasonable attorney fees at trial and on appeal. Any grantee or other person
> purportedly benefited by an invalid encumbrance that is filed who willfully
> refuses to release the invalid encumbrance upon request of the owner of the
> property affected shall be liable to the owner for the damages and costs and
> reasonable attorney fees at trial and on appeal provided in this section.

Thus, to state a claim, plaintiff must allege facts sufficient to show that (1) Debtors are the

"owner" of the property; (2) Cobalt knowingly filed an invalid encumbrance; or (3) Cobalt

willfully refused to release an invalid encumbrance after an adequate request. Plaintiff's claim

fails on all three counts.

     ***First***, Plaintiff's claim for invalid encumbrance under ORS 205.470 fails at the threshold,

because plaintiff and the Debtors hold no interest in the property. The statutory cause of action

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Case 16-03046-rld   Doc 8   Filed 04/27/16

for invalid encumbrance is only available to "the *owner of the property* bound by the claim of encumbrance," and only after the encumbering party "willfully refuses to release the invalid encumbrance *upon request of the owner of the property affected*." ORS 205.470 (emphasis added). Debtors are not the "owner of the property" because their interest was foreclosed and terminated upon the trustee's sale. ORS 86.797(1). Because plaintiff cannot satisfy the statutory requirement of being the "owner of the property bound," his claim fails at the threshold.

*Second*, even assuming Debtors are the "owner of the property," the claim would still fail because plaintiff has not alleged and cannot allege facts to sufficient to show that Cobalt *knowingly* filed an *invalid* encumbrance. For the reasons described above, the Cobalt Trust Deed is not an invalid encumbrance at all—the trustee's sale cannot be unwound, and Creswell, the grantor of the Cobalt Trust Deed, is the owner of the property. But moreover, there is not a single fact alleged in the complaint to support the notion that at the time Cobalt recorded the Cobalt Trust Deed—two purchasers removed from the unchallenged trustee's sale—Cobalt *knew* the encumbrance was "invalid."

*Third*, plaintiff cannot establish that Cobalt "willfully" refused to remove the "invalid" encumbrance upon request. To "willfully refuse[] to release the invalid encumbrance," ORS 205.470, Cobalt would have to know that the encumbrance was "invalid." As described above, plaintiff's allegations do not support a claim that the encumbrance was "invalid" or that Cobalt had any reason to know of any alleged interest of Debtors. Further, plaintiff did not make an adequate request to remove the encumbrance. Plaintiff, in an apparent attempt to satisfy this statutory pre-requisite, mailed a demand to remove encumbrances on March 15, 2016. Kono Dec. Ex 8.[10] The complaint was filed merely two days later, March 17, 2016. Not removing an encumbrance within a span of two days (not even accounting for mailing time), as a matter of law, cannot constitute a "willful" refusal to remove an encumbrance.

---

[10] The court may consider the notice because plaintiff's complaint relies upon it. *See* Complaint ¶ 36; *see also* footnote 1, *supra*.

Page 18 - DEFENDANT COBALT MORTGAGE, INC.'S MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Finally, plaintiff's claim for invalid encumbrance fails for the additional reason that the Cobalt Trust Deed is a "valid" encumbrance. ORS 205.450(1) provides that an "encumbrance" is a "claim, lien, charge or liability attached to and binding property." An "invalid claim of encumbrance" is a "claim of encumbrance that is not a valid claim of encumbrance," ORS 205.450(5), while a "valid claim of encumbrance" is one "authorized by statute," "a consensual encumbrance recognized under the laws of this state," or an "equitable, constructive or other encumbrance imposed by a court of competent jurisdiction." ORS 205.450(8). The Cobalt Trust Deed is a *valid* encumbrance, because it is authorized by the terms of the OTDA and the Cobalt Trust Deed itself; in other words the encumbrance is "authorized by statute" or is a "consensual encumbrance." ORS 205.450(8). This is especially true because Creswell is a *bona fide* purchaser of the property. Thus, she may rely on the recitals in the Trustee's Deed to establish *conclusively* that Debtors' rights have been extinguished. Because Debtors have no rights to enforce, Creswell's ownership is intact and the Cobalt Trust Deed is a "valid encumbrance."

## VI. CONCLUSION

Plaintiff's claims all flow from the premise, incorrect as a matter of law, that Debtors have the ability to challenge a non-judicial foreclosure completed over five and one-half years ago, and following additional transfers of the Property to good faith purchasers. But under the plain text of ORS 86.797(1), ORS 86.803, and the cases construing them, Debtors' interest was foreclosed and terminated upon completion of the trustee's sale, and plaintiff cannot now seek to unwind it, especially where the Property has been subsequently transferred—twice—to good faith purchasers. Because plaintiff cannot now unwind the completed trustee's sale, and for the

DWT 29392308v8 0083991-000034
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

additional reasons stated herein, the Court should dismiss plaintiff's claims against Cobalt with prejudice.

DATED this 27th day of April, 2016.

DAVIS WRIGHT TREMAINE LLP

By  s/ Kevin H. Kono
 **KEVIN H. KONO**, OSB #023528
 kevinkono@dwt.com
 **TIM CUNNINGHAM**, OSB #100906
 timcunningham@dwt.com
 Telephone: (503) 241-2300
 Facsimile: (503) 778-5299

 **FREDERICK B. BURNSIDE**, OSB #096617
 fredburnside@dwt.com
 1201 Third Avenue, Suite 2200
 Seattle, WA 98101
 Telephone:  (206) 757-8016
 Facsimile:  (206) 757-7016

 Attorneys for Defendant Cobalt Mortgage, Inc.

Page 20 - DEFENDANT COBALT MORTGAGE, INC.'S MOTION TO DISMISS

DWT 29392308v8 0083991-000034

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Case 16-03046-rld   Doc 8   Filed 04/27/16

# CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing **DEFENDANT COBALT MORTGAGE, INC.'S MOTION TO DISMISS** on:

Aurora Loan Services LLC
c/o Lehman Brothers Holdings Inc.
1271 65h Avenue, 40th Floor
New York, NY  10020

Cal-Western Reconveyance Corporation
c/o Charles Piper, President
PO Box 767427
Roswell, GA  30076

Michael D Chen
14509 SE Wallowa Way
Happy Valley, OR  97086

Yung-Feng Chou
14509 SE Wallowa Way
Happy Valley, OR  97086

Christina Creswell
1452 NW 6th Ave.
Hillsboro, OR  97124

☒     by mailing a copy thereof in a sealed, first-class postage prepaid envelope, addressed to said individual's last-known address and deposited in the U.S. mail at Portland, Oregon on the date set forth below.

Dated this 27th day of April, 2016.


By  s/ Kevin H. Kono
     Kevin H. Kono, OSB #023528
     Tim Cunningham, OSB # 100906

Of Attorneys for Defendant Cobalt Mortgage, Inc.

DWT 29392308v8 0083991-000034

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

**KEVIN H. KONO, OSB #023528**
kevinkono@dwt.com
**TIM CUNNINGHAM, OSB #100906**
timcunningham@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
Telephone:  (503) 241-2300
Facsimile:  (503) 778-5299

**FREDERICK B. BURNSIDE, OSB #096617**
fredburnside@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1201 Third Avenue, Suite 2200
Seattle, WA 98101
Telephone:  (206) 757-8016
Facsimile:  (206) 757-7016

　　　　Attorneys for Defendant
　　　　Cobalt Mortgage, Inc.

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br>**Estate of Jeffrey Ron King**<br>**Tisha Renee King**<br><br>　　　　　　　　**Debtors,**<br><br>**STEPHEN P. ARNOT, Chapter 7 Trustee**<br>**for the Estate of Jeffrey Ron King and Tisha**<br>**Renee King,**<br><br>　　　　　　**PLAINTIFF**,<br><br>　　v.<br><br>**CHRISTINA CRESWELL, CAL-**<br>**WESTERN RECONVEYANCE**<br>**CORPORATION, AURORA LOAN**<br>**SERVICES, LLC, MICHAEL D. CHEN,**<br>**YUNG-FENG CHOU and COBALT**<br>**MORTGAGE, INC.,**<br><br>　　　　　　**DEFENDANTS**. | Case No. 11-30645-rld7<br><br>Adv. Proc. No. 16-03046-rld<br><br>**DECLARATION OF KEVIN H. KONO**<br>**IN SUPPORT OF DEFENDANT**<br>**COBALT MORTGAGE, INC.'S**<br>**MOTION TO DISMISS** |

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

I, Kevin H. Kono, hereby declare:

1.     I am one of the attorneys representing defendant Cobalt Mortgage, Inc. ("Cobalt") in the above-referenced matter. I make this declaration in support of Defendant Cobalt Mortgage, Inc.'s Motion to Dismiss. I have personal knowledge of and am competent to testify regarding all matters contained herein.

2.     I caused to be conducted a search of the publicly recorded documents with respect to the property identified in paragraph 4 of plaintiff's Complaint. Dkt. # 1, Ex. 1 at 3. The documents attached to this declaration as Exhibits 1 through 7 are true and correct copies of recorded documents that were located and retrieved from the public records in connection with that search.

3.     Attached hereto as **Exhibit 1** is a true and correct copy of a "Deed of Trust" dated February 2, 2006 and recorded as document number 2006-013783 in the records of Washington County, Oregon against 1452 Northwest 6th Avenue, Hillsboro, Oregon, securing a loan in a stated amount of $148,000.00.

4.     Attached hereto as **Exhibit 2** is a true and correct copy of a "Notice of Default and Election to Sell" dated August 7, 2009 and recorded as document number 2009-073805 in the records of Washington County, Oregon.

5.     Attached hereto as **Exhibit 3** is a true and correct copy of a "Substitution of Trustee" dated August 7, 2009 and recorded as document number 2009-073804 in the records of Washington County, Oregon.

6.     Attached hereto as **Exhibit 4** is a true and correct copy of a "Trustee's Deed" dated June 11, 2010 and recorded as document number 2010-053071 in the records of Washington County, Oregon.

7.     Attached hereto as **Exhibit 5** is a true and correct copy of a "Special Warranty Deed" dated July 23, 2010 and recorded as document number 2010-061986 in the records of Washington County, Oregon.

DWT 29424166v2 0083991-000034

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

8.      Attached hereto as **Exhibit 6** is a true and correct copy of a "Statutory Warranty Deed" dated April 24, 2014 and recorded as document number 2014-023736 in the records of Washington County, Oregon.

9.      Attached hereto as **Exhibit 7** is a true and correct copy of a "Deed of Trust" dated April 24, 2014 and recorded as document number 2014-023737 in the records of Washington County, Oregon against 1452 Northwest 6th Avenue, Hillsboro, Oregon, securing a loan in a stated amount of $181,649.00.

10.     Attached hereto as **Exhibit 8** is a true and correct copy of a letter dated March 15, 2016 from plaintiff's counsel addressed to, among others, Cobalt Mortgage, Inc., c/o Keith Tibbles, President, 11241 Slater Avenue NE, Kirkland, WA 98033.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct, and that this Declaration was executed on April 27, 2016, in Portland, Oregon.

 s/ Kevin H. Kono
Kevin H. Kono

Page 3 – DECLARATION OF KEVIN H. KONO

DWT 29424166v2 0083991-000034

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Case 16-03046-rld    Doc 8    Filed 04/27/16

Washington County, Oregon **2006-013783**
02/06/2006 10:33:35 AM
D-M                    Cnt=1 Stn=22 I REED
$130.00 $6.00 $11.00 - Total = $147.00



0090552220060013783020267

I, Jerry Hanson, Director of Assessment and Taxation
and Ex-Officio County Clerk for Washington County,
Oregon, do hereby certify that the within instrument of
writing was received and recorded in the book of
records of said county.                *Jerry Hanson*
Jerry R. Hanson, Director of Assessment and Taxation,
Ex-Officio County Clerk

Until a change is requested all tax statements shall be sent
to the following address.
HomeComings Financial Network, Inc.
P.O. Box 890036
Dallas, TX 75389

**WHEN RECORDED MAIL TO**
HOMECOMINGS FINANCIAL NETWORK, INC.
One Meridian Crossing, Ste. 100
Minneapolis MN 55423

**TAX ACCOUNT NUMBER**  APN #1:  R2103274
                        APN #2:
True and Actual Consideration is:   ONE HUNDRED FORTY EIGHT THOUSAND AND NO/100 DOLLAR
$      148,000.00              ———— [Space Above This Line For Recording Data] ————

# DEED OF TRUST

**Mortgage Electronic Registration Systems, Inc. (MERS) is the Grantee of this Security Instrument**

MIN ████████1265

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated   FEBRUARY 1ST, 2006                ,
together with all Riders to this document.
**(B) "Borrower"** is
JEFFREY R KING AND TISHA R KING, HUSBAND AND WIFE, AS ~~JOINT~~ TENANTS *by the entirety*

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is  HOMECOMINGS FINANCIAL NETWORK, INC.

Lender is a  CORPORATION
organized and existing under the laws of  DELAWARE
Lender's address is  1687 114TH AVE., SE, SUITE 100
BELLEVUE, WA 98004
**(D) "Trustee"** is  FIRST AMERICAN TITLE

---

**OREGON** - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**                Form 3038  1/01
MFOR7770 (11/2004) / 042-695512-6
Ⓥ -6A(OR) (0408).01
Page 1 of 15                    Initials
VMP Mortgage Solutions, Inc. (800)521-7291

Recorded By
First American Title Insurance Company of Oregon
No. _____  DH 19127

Exhibit 1
Page 1 of 15
Case 16-03046-rld   Doc 8   Filed 04/27/16

**(E)** "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F)** "**Note**" means the promissory note signed by Borrower and dated FEBRUARY 1ST, 2006 .
The Note states that Borrower owes Lender   ONE HUNDRED FORTY EIGHT THOUSAND AND
NO/100                                                                                              Dollars
(U.S. $ 148,000.00           ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than MARCH 1ST, 2036                         .

**(G)** "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

**(H)** "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I)** "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [X] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(J)** "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K)** "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L)** "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)** "**Escrow Items**" means those items that are described in Section 3.

**(N)** "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O)** "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)** "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY                                          of WASHINGTON                                          :

| [Type of Recording Jurisdiction] | [Name of Recording Jurisdiction] |
|---|---|

LOT 24, ALDERBROOK SOUTH, IN THE CITY OF HILLSBORO, COUNTY OF WASHINGTON AND STATE OF OREGON.

which currently has the address of

1452 NORTHWEST 6TH AVENUE                          ,                          [Street]
HILLSBORO                          [City] , Oregon          97124          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

MFOR7770 (11/2004) / 042-695512-6
VMP®-6A(OR) (0408).01                          Page 3 of 15          Initials: _____          Form 3038  1/01

Exhibit 1
Page 3 of 15
Case 16-03046-rld    Doc 8    Filed 04/27/16

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community

Exhibit 1
Page 4 of 15

Case 16-03046-rld   Doc 8   Filed 04/27/16

Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

Exhibit 1

Page 5 of 15

Case 16-03046-rld   Doc 8   Filed 04/27/16

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Exhibit 1

Page 6 of 15

Case 16-03046-rld    Doc 8    Filed 04/27/16

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

MFOR7770 (11/2004) / 042-695512-6

⬬-6A(OR) (0408).01                    Page 7 of 15                    Form 3038  1/01

Initials:

Exhibit 1
Page 7 of 15

Case 16-03046-rld    Doc 8    Filed 04/27/16

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

Exhibit 1
Page 8 of 15

Case 16-03046-rld    Doc 8    Filed 04/27/16

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

Initials: [signature]

Exhibit 1
Page 9 of 15

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

MFOR7770 (11/2004) / 042-695512-6

VMP®-6A(OR) (0408).01

Page 10 of 15

Initials

Form 3038   1/01

Exhibit 1
Page 10 of 15

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Exhibit 1
Page 11 of 15

Case 16-03046-rld    Doc 8    Filed 04/27/16

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Exhibit 1
Page 12 of 15

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Attorneys' Fees.** As used in this Security Instrument and in the Note, attorneys' fees shall include those awarded by an appellate court.

**26. Protective Advances.** This Security Instrument secures any advances Lender, at its discretion, may make under Section 9 of this Security Instrument to protect Lender's interest in the Property and rights under this Security Instrument.

**27. Required Evidence of Property Insurance.**

**WARNING**

Unless you provide us with evidence of the insurance coverage as required by our contract or loan agreement, we may purchase insurance at your expense to protect our interest. This insurance may, but need not, also protect your interest. If the collateral becomes damaged, the coverage we purchase may not pay any claim you make or any claim made against you. You may later cancel this coverage by providing evidence that you have obtained property coverage elsewhere.

MFOR7770 (11/2004) / 042-695512-6

VMP®-6A(OR) (0408).01                      Page 13 of 15                      Form 3038  1/01

Exhibit 1
Page 13 of 15

Case 16-03046-rld    Doc 8    Filed 04/27/16

You are responsible for the cost of any insurance purchased by us. The cost of this insurance may be added to your contract or loan balance. If the cost is added to your contract or loan balance, the interest rate on the underlying contract or loan will apply to this added amount. The effective date of coverage may be the date your prior coverage lapsed or the date you failed to provide proof of coverage.

The coverage we purchase may be considerably more expensive than insurance you can obtain on your own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     _____ (Seal)
JEFFREY R KING    -Borrower

_____     _____ (Seal)
TISHA R KING    -Borrower

_____ (Seal)    _____ (Seal)
-Borrower    -Borrower

_____ (Seal)    _____ (Seal)
-Borrower    -Borrower

_____ (Seal)    _____ (Seal)
-Borrower    -Borrower

STATE OF OREGON, *Washington* County ss:

On this *2ⁿᵈ* day of *February* 2006, personally appeared the above named
JEFFREY R KING AND TISHA R KING, HUSBAND AND WIFE, AS JOINT TENANTS

and acknowledged the foregoing instrument to be his/her/their voluntary act and deed.

My Commission Expires: 10.14.07

(Official Seal)

Before me:

_____
Notary Public for Oregon

OFFICIAL SEAL
**LEIGH THOMAS**
NOTARY PUBLIC-OREGON
COMMISSION NO. 372423
MY COMMISSION EXPIRES OCTOBER 14, 2007

Exhibit 1
Page 15 of 15

Case 16-03046-rld    Doc 8    Filed 04/27/16



Washington County, Oregon
08/11/2009 03:34:53 PM
D-NDES      Cnt=1  Stn=16  D HOFFMAN
$15.00 $5.00 $11.00 - Total = $31.00

**2009-073805**



01397552200900738050030030

I, Richard Hobernicht, Director of Assessment and Taxation and Ex-Officio County Clerk for Washington County, Oregon, do hereby certify that the within instrument of writing was received and recorded in the book of records of said county.

Richard Hobernicht, Director of Assessment and Taxation, Ex-Officio County Clerk

AFTER RECORDING RETURN TO:

CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON  CA  92022-9004
(619)590-9200

  

_____(Recorder's Use)_____

# NOTICE OF DEFAULT AND ELECTION TO SELL

Loan No.: XXXXXX9785  T.S. No.: 1228188-09

Reference is made to that certain trust deed made by
JEFFREY R KING AND TISHA R KING, HUSBAND AND WIFE, AS TENANTS BY THE ENTIRETY

as grantor,
to FIRST AMERICAN TITLE
as trustee,
in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
as beneficiary, dated February 01, 2006, recorded February 06, 2006, in the official records of
WASHINGTON County, Oregon, in book/reel/volume No. XX at page XX,
fee/file/instrument/microfilm/reception No. 2006-013783 (indicate which), covering the following described
real property situated in said County and State, to-wit:
LOT 24, ALDERBROOK SOUTH, IN THE CITY OF HILLSBORO, COUNTY OF WASHINGTON AND
STATE OF OREGON.

CAL-WESTERN RECONVEYANCE CORPORATION
as Trustee, hereby certifies that no assignments of the trust deed by the trustee or by the beneficiary and no
appointments of a successor-trustee have been made except as recorded in the mortgage records of the county
or counties in which the above described real property is situated;  further, that no action, suit or proceeding
has been instituted to recover the debt, or any part thereof, now remaining secured by the said trust deed, or, if
such action or proceeding has been instituted, such action or proceeding has been dismissed except an action
to appoint a receiver pursuant to ORS 86.010, or the foreclosure of another trust deed, mortgage, security
agreement or other consensual or nonconsensual security interest or lien securing repayment of this debt.

There is a default by the grantor or other person owing an obligation, or by their successor-in-interest, the
performance of which is secured by said trust deed with respect to provisions therein which authorize sale in
the event of default of such provision;  the default for which foreclosure is made is grantor's:

NODOR.DOC                      Rev. 01/14/08                      Page 1 of 3

Exhibit 2
Page 1 of 3

# NOTICE OF DEFAULT AND ELECTION TO SELL

Loan No.: XXXXXX9785
T.S. No.: 1228188-09

Failure to pay the monthly payment due April 1, 2009 of principal and interest and subsequent installments due thereafter; plus late charges; together with all subsequent sums advanced by beneficiary pursuant to the terms and conditions of said deed of trust.

Monthly Payment: $726.46  Monthly Late Charge: $.00

By reason of said default, the beneficiary has declared all obligations secured by said trust deed immediately due and payable said sums being the following, to-wit:

The principal sum of $159,712.15 together with interest thereon at the rate of the rate of 5.125% per annum, from March 01, 2009 until paid; plus all accrued late charges thereon; and all trustee's fees, foreclosure costs and any sums advanced by the beneficiary pursuant to the terms and conditions of said deed of trust.

Notice is hereby given that the beneficiary and trustee, by reason of said default, have elected and do hereby elect to foreclose said trust deed by advertisement and sale pursuant to Oregon Revised Statutes Sections 86.705 to 86.795, and to cause to be sold at public auction to the highest bidder for cash funds the interest in the said described property which the grantor had, or had the power to convey, at the time of the execution by him of the trust deed, together with any interest the grantor or his successors in interest acquired after execution of the trust deed to satisfy the obligations secured by said trust deed and the expenses of the sale, including the compensations of the trustee as provided by law, and the reasonable fees of trustee's attorneys.

Said sale will be held at the hour of 1:00pm, Standard of Time as established by Section 187.110 of Oregon Revised Statutes on December 14, 2009 at the following place:
AT THE GRIFFITH DRIVE ENTRANCE TO BEAVERTON CITY HALL
4755 SW GRIFFITH DRIVE
in the City of BEAVERTON County of WASHINGTON, State of Oregon, which is the hour, date and place fixed by the trustee for said sale.

Other than as shown of record neither the said beneficiary nor the said trustee has any actual notice of any person having or claiming to have any lien upon or interest in the real property hereinabove described subsequent to the interest of the trustee in the trust deed, or of any successor in interest to the grantor or of any lessee or other persons in possession of or occupying the property:

Notice is further given that any person named in Section 86.753 of Oregon Revised Statutes has the right to have the foreclosure proceeding dismissed and the trust deed reinstated by payment to the beneficiary of the entire amount then due (other than such portion of said principal as would not then be due had no default occurred), together with costs, trustee's and attorney's fee by curing any other default complained of in the Notice of Default by tendering the performance required under the obligation or trust deed, at any time prior to five days before the date last set for sale.

Exhibit 2
Page 2 of 3

# NOTICE OF DEFAULT AND ELECTION TO SELL

Loan No.: XXXXXX9785
T.S. No.: 1228188-09

In construing this notice, the masculine gender includes the feminine and the neuter, the singular includes the plural, the word "grantor" includes any successor in interest to the grantor as well as any other persons owing an obligation, the performance of which is secured by said trust deed, the words "trustee" and "beneficiary" include their respective successors in interest, if any.

CAL-WESTERN RECONVEYANCE CORPORATION

By/Signature: _____
Lorrie Womack, A.V.P.

August 07, 2009

STATE OF CALIFORNIA
COUNTY OF SAN DIEGO

On AUG 0 7 2009 before me, C. Hoy ,
a Notary Public in and for said State, personally appeared Lorrie Womack, A.V.P. ,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal                                    (Seal)

Signature _____

C. Hoy

C. HOY
COMM. # 1677772
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Comm. Exp. June 25, 2010

NODOR.DOC                    Rev. 01/14/08                    Page 3 of 3

Exhibit 2
Page 3 of 3

Case 16-03046-rld    Doc 8    Filed 04/27/16

RECORDING REQUESTED BY:

AND WHEN RECORDED MAIL TO:

CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON  CA  92022-9004

Washington County, Oregon **2009-073804**
08/11/2009 03:34:53 PM
D-MST  Cnt=1  Stn=16  D HOFFMAN
$10.00 $5.00 $11.00 - Total = $26.00

 

I, Richard Hobernicht, Director of Assessment and
Taxation and Ex-Officio County Clerk for Washington
County, Oregon, do hereby certify that the within
instrument of writing was received and recorded in the
book of records of said county.

Richard Hobernicht, Director of Assessment and
Taxation, Ex-Officio County Clerk

Space Above This Line For Recorder's use

Loan No.: XXXXXX9785
T.S. No.: 1228188-09

## SUBSTITUTION OF TRUSTEE

WHEREAS, JEFFREY R KING AND TISHA R KING, HUSBAND AND WIFE, AS TENANTS BY THE ENTIRETY     was the original Grantor, FIRST AMERICAN TITLE was the original Trustee and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.     was the original Beneficiary under that certain Deed of Trust dated February 01, 2006 and recorded on February 06, 2006 as Instrument No. 2006-013783, in Book XX, Page XX of the Official Records of WASHINGTON County, Oregon and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in the place and stead of present Trustee thereunder,

NOW, THEREFORE, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.     hereby substitutes CAL-WESTERN RECONVEYANCE CORPORATION, A licensed Oregon Escrow agent and a California Corporation whose corporate address is 525 EAST MAIN STREET, P.O. BOX 22004, EL CAJON  CA  92022-9004 as a Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

SUBOR.DOC                    Rev. 01/14/08                    Page 1 of 2

Exhibit 3

# SUBSTITUTION OF TRUSTEE

**LOAN NO:** __XXXXXX9785__

**TS NO:** __1228188-09__

**Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.**

**Dated:** __AUG 0 7 2009__

Mortgage Electronic Registration Systems, Inc. (MERS)

Susan Smothers
**Assistant Secretary of MERS**

**STATE OF:** California
**COUNTY OF:** San Diego

C. Hoy

On __AUG 0 7 2009__ before me, _____, a Notary Public in and for said State, personally appeared Susan Smothers, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

C. Hoy

C. HOY
COMM. # 1677772
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Comm. Exp. June 26, 2010

Exhibit 3
Page 2 of 2

Case 16-03046-rld    Doc 8    Filed 04/27/16

Washington County, Oregon
07/13/2010 03:33:00 PM    **2010-053071**
D-DTR      Cnt=1  Stn=16  D HOFFMAN
$15.00 $5.00 $11.00 $15.00 - Total = $46.00



0150002420100053071003 0039
I, Richard Hobernicht, Director of Assessment and
Taxation and Ex-Officio County Clerk for Washington
County, Oregon, do hereby certify that the within
instrument of writing was received and recorded in the
book of records of said county.
    Richard Hobernicht, Director of Assessment and
    Taxation, Ex-Officio County Clerk

After recording return to:
AURORA LOAN SERVICES, LLC
2617 COLLEGE PARK DRIVE
SCOTTSBLUFF NE 69361-2294

Until a change is requested all tax statements
shall be sent to the following address:

Same as above

_____SPACE ABOVE THIS LINE FOR RECORDER'S USE_____

# TRUSTEE'S DEED

T.S. No.    1228188-09
Loan No.    XXXXXX9785

THIS INDENTURE, Made June 11, 2010, between CAL-WESTERN RECONVEYANCE
CORPORATION, hereinafter called trustee, and
AURORA LOAN SERVICES, LLC
hereinafter called the second party;

WITNESSETH:

Pursuant to said notice of sale, the undersigned trustee on June 11, 2010, at the hour of 1:00pm, of said
day, in accord with the standard of time established by ORS 187.110, (which was the day and hour to
which said sale was postponed as permitted by ORS 86.755(2))(which was the day and hour set in the
amended Notice of Sale) and at the place so fixed for sale, as aforesaid, in full accordance with the laws
of the state of Oregon and pursuant to the powers conferred upon him by said trust deed, sold said real
property in one parcel at public auction to the said second party for the sum of $133,000.00, he being the
highest and best bidder at such sale and said sum being the highest and best sum bid for said property.
The true and actual consideration paid for this transfer is the sum of $133,000.00.

RECITALS: JEFFREY R KING AND TISHA R KING, HUSBAND AND WIFE, AS TENANTS BY
THE ENTIRETY, as grantor, executed and delivered to FIRST AMERICAN TITLE, as trustee, for the
benefit of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as beneficiary, a certain
trust deed dated February 01, 2006, duly recorded on February 06, 2006, in the mortgage records of
WASHINGTON County, Oregon, in book/reel/volume No XX at page XX, or as
fee/file/instrument/microfilm/reception No. 2006-013783 (indicate which). In said trust deed the real
property therein and hereinafter described was conveyed by said grantor to said trustee to secure, among
other things, the performance of certain obligations of the grantor to the said beneficiary. The said
grantor thereafter defaulted in his performance of the obligations secured by said trust deed as stated in
the notice of default hereinafter mentioned and such default still existed at the time of the sale hereinafter
described.

By reason of said default, the owner and holder of the obligations secured by said trust deed, being the
beneficiary therein named, or his successor in interest, declared all sums so secured immediately due and
owing; a notice of default, containing an election to sell the said real property and to foreclose said trust
deed by advertisement and sale to satisfy grantor's said obligations was recorded in the mortgage records
of said county on August 11, 2009, in book/reel/volume No XX at page XX, thereof or as
fee/file/instrument/microfilm/reception No. 2009-073805 (indicate which), to which reference now is
made.

TDUSOR.DOC                    Rev. 09/15/09                    Page 1 of 3

Exhibit 4
Page 1 of 3

# TRUSTEE'S DEED

Loan No: XXXXXX9785
T.S. No: 1228188-09

After the recording of said notice of default, as aforesaid, CAL-WESTERN RECONVEYANCE CORPORATION the undersigned trustee gave notice of the time for and place of sale of said real property as fixed by him and as required by law; copies of the Trustee's Notice of Sale were served pursuant to ORCP 7D.(2) and 7D.(3) or mailed by both first class and certified mail with return receipt requested, to the last-known address of the persons or their legal representatives, if any, named in ORS 86.740(1) and (2)(a), at least 120 days before the date the property
was sold, and the Trustee's Notice of Sale was mailed by first class and certified mail with return receipt requested, to the last-known address of the guardian, conservator or administrator or executor of any person named in ORS 86.740(1), promptly after the trustee received knowledge of the disability, insanity or death of any such person; the Notice of Sale was served upon occupants of the property described in the trust deed in the manner in which a summons is served pursuant to ORCP 7D.(2) and 7D.(3) at least 120 days before the date the property was sold, pursuant to ORS 86.750(1). If the foreclosure proceedings were stayed and released from the stay, copies of an Amended Notice of Sale in the form required by ORS 86.755(6) were mailed by registered or certified mail to the last-known address of those persons listed in ORS 86.740 and 86.750(1) and to the address provided by each person who was present at the time and place set for the sale which was stayed within 30 days after the release from the stay. If the Notice of Default recorded on or after 06/08/08 an additional notice required under HB3630 was mailed to grantors at least 120 days prior to sale via first class and certified mail with return receipt requested. Further, the trustee published a copy of said notice of sale in a newspaper of general circulation in each county in which the said real property is situated, once a week for four successive weeks; the last publication of said notice occurred more than twenty days prior to the date of such sale. The mailing, service and publication of said notice of sale are shown by one or more affidavits or proofs of service duly recorded prior to the date of sale in the official records of said county, said affidavits and proofs, together with the said notice of default and election to sell and the trustee's notice of sale, being now referred to and incorporated in and made a part of this trustee's deed as fully as if set out herein verbatim. The undersigned trustee has no actual notice of any person, other than the persons named in said affidavits and proofs as having or claiming a lien on or interest in said described real property, entitled to notice pursuant to ORS 86.740(1)(b) or (1)(c).

NOW THEREFORE, in consideration of the said sum so paid by the second party in cash, the receipt whereof is acknowledged, and by the authority vested in said trustee by the laws of the State of Oregon and by said trust deed, the trustee does hereby convey unto the second party all interest which the grantor had or had the power to convey at the time of grantor's execution of said trust deed, together with any interest the said grantor or his successors in interest acquired after the execution of said deed in and to the following described real property, to-wit:

LOT 24, ALDERBROOK SOUTH, IN THE CITY OF HILLSBORO, COUNTY OF WASHINGTON AND STATE OF OREGON.

Exhibit 4

Case 16-03046-rld    Doc 8    Filed 04/27/16

**TRUSTEE'S DEED**

Loan No: XXXXXX9785
T.S. No: 1228188-09

TO HAVE AND TO HOLD the same unto the second party, his heirs, successors-in-interest and assigns forever.

In constructing this instrument and whenever the context so requires, the masculine gender includes the feminine and the neuter and the singular includes the plural; the word "grantor" includes any successor-in-interest to the grantor as well as each and all other persons owing an obligation, the performance of which is secured by said trust deed; the word "trustee" includes any successor trustee, the word "beneficiary" includes any successor-in-interest of the beneficiary first named above, and the word "person" includes corporation and any other legal or commercial entity.

IN WITNESS WHEREOF, the undersigned trustee has hereunto set his hand; if the undersigned is a corporation, it has caused its corporate name to be signed and its corporate seal to be affixed hereunto by its officers duly authorized thereunto by order of its Board of Directors.

THIS INSTRUMENT WILL NOT ALLOW USE OF THE PROPERTY DESCRIBED IN THIS INSTRUMENT IN VIOLATION OF APPLICABLE LAND USE LAWS AND REGULATIONS. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITIES OR COUNTIES PLANNING DEPARTMENT TO VERIFY APPROVED USES.

DATED:     JUN 1 1 2010          CAL-WESTERN RECONVEYANCE CORPORATION

_____Monica L. Gonzalez, A.V.P._____

State of California
County of San Diego

On __JUL 0 7 2010__ before me, _____Jeffrey Starling_____,
a Notary Public, personally appeared _____Monica L. Gonzalez, A.V.P._____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal                              (Seal)

Signature _____

JEFFREY STARLING
COMMISSION # 1858755
Notary Public - California
SAN DIEGO COUTY
My Comm. Expires Jul 24 2013

Exhibit 4
Page 3 of 3

Case 16-03046-rld    Doc 8    Filed 04/27/16

Fidelity National Title of Oregon

36



0161020620100061986001001 4

I, Richard Hobernicht, Director of Assessment and
Taxation and Ex-Officio County Clerk for Washington
County, Oregon, do hereby certify that the within
instrument of writing was received and recorded in the
book of records of said county.
Richard Hobernicht, Director of Assessment and
Taxation, Ex-Officio County Clerk

2010000975I-03

RECORDING REQUESTED BY:
Fidelity National Title Company of Oregon
GRANTOR'S NAME:
Aurora Loan Services, LLC
GRANTEE'S NAME:
Mike Dal Yang Chen and Yung-Feng Chou
SEND TAX STATEMENTS TO:
Mike Dal Yang Chen and Yung-Feng Chou
14509 SE Wallawa Way
Happy Valley, OR 97086
AFTER RECORDING RETURN TO:
Mike Dal Yang Chen and Yung-Feng Chou
14509 SE Wallawa Way
Happy Valley, OR 97086
Escrow #: 20100009751-FTPOR03
1452 NW 6th Avenue
Hillsboro, OR 97124

WASHINGTON COUNTY
REAL PROPERTY TRANSFER TAX
$ 122.00     8/12/10
FEE PAID        DATE

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## SPECIAL WARRANTY DEED – STATUTORY FORM
(INDIVIDUAL or CORPORATION)
### 1452 NW 6th Avenue, Hillsboro, Oregon 97124

Aurora Loan Services, LLC Grantor, conveys and specially warrants to
Michael D.Chen
Mike Dal Yang Chen and Yung-Feng Chou , tenants in common (50/50)
Grantee, the following described real property free and clear of encumbrances created or suffered by the
grantor except as specifically set forth below:

Lot 24, ALDERBROOK SOUTH, in the City of Hillsboro, County of Washington and State of
Oregon
ENCUMBRANCES: Any covenants, conditions, restrictions and easements of record, 2010-2011 taxes a
lien not yet due and payable
BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON TRANSFERRING FEE TITLE
SHOULD INQUIRE ABOUT THE PERSON'S RIGHTS, IF ANY, UNDER ORS 195.300, 195.301 AND
195.305 TO 195.336 AND SECTIONS  5 TO 11, CHAPTER 424, OREGON LAWS 2007, AND
SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009.  THIS INSTRUMENT DOES NOT
ALLOW USE OF THE PROPERTY DESCRIBED IN THIS INSTRUMENT IN VIOLATION OF
APPLICABLE LAND USE LAWS AND REGULATIONS.  BEFORE SIGNING OR ACCEPTING THIS
INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH
THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY THAT THE UNIT OF
LAND BEING TRANSFERRED IS A LAWFULLY ESTABLISHED LOT OR PARCEL, AS DEFINED IN
ORS 92.010 OR 215.010, TO VERIFY THE APPROVED USES OF THE LOT OR PARCEL, TO
DETERMINE ANY LIMITS ON LAWSUITS AGAINST FARMING OR FOREST PRACTICES, AS
DEFINED IN ORS 30.930, AND TO INQUIRE ABOUT THE RIGHTS OF NEIGHBORING PROPERTY
OWNERS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS  5 TO
11, CHAPTER 424, OREGON LAWS 2007, AND SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON
LAWS 2009.

The true consideration for this conveyance is $ 123,000.00 $121,600.00
Dated July 22, 2010; if a corporate grantor, it has caused its name to be signed by order of its board of
directors.

Aurora Loan Services, LLC
BY LPS Asset Management Solutions, Inc
As Attorney in Fact

BY:_____
ITS:____ Norma J. Dudgeon, AVP

State of Colorado
County of Jefferson

This instrument was acknowledged before me on July 23 , 20 10 by
Norma J. Dudgeon, AVP
BY LPS Asset Management Solutions, Inc as Attorney in Fact for Aurora Loan Services, LLC

_____
Notary Public - State of Colorado
My commission expires: 10.17.2012

DIANE C. JONES
NOTARY PUBLIC
STATE OF COLORADO
My Commission Expires 10/17/2012

Exhibit 5
Page 1 of 1

| Grantor |
| --- |
| Michael D. Chen |
| Yung-Feng Chou |
| 14509 SE Wallowa Way |
| Happy Valley, OR 97086, |
| **Grantee** |
| Christina Creswell |
| 1452 NW 6th Avenue |
| Hillsboro, OR  97124 |
| **After recording return to** |
| Christina Creswell |
| 1452 NW 6th Avenue |
| Hillsboro, OR  97124 |
| **Until requested, all tax statements shall be sent to** |
| same as above |
| Tax Acct No(s):  R2103274 |

WFG Title  4003835  HD

Washington County, Oregon **2014-023736**
D-DW
Stn=5 A STROM  04/24/2014 02:55:25 PM
$10.00 $11.00 $5.00 $185.00 $20.00  **$231.00**

I, Richard Hobernicht, Director of Assessment and Taxation and Ex-Officio County Clerk for Washington County, Oregon, do hereby certify that the within instrument of writing was received and recorded in the book of records of said county.

Richard Hobernicht, Director of
Assessment and Taxation, Ex-Officio

Reserved for Recorder's Use

## STATUTORY WARRANTY DEED

Michael D. Chen and Yung-Feng Chou, Grantor(s) convey and warrant to Christina Creswell,

Grantee(s), the following described real property free of encumbrances except as specifically set forth herein:

**Lot 24, Alderbrook South, in the City of Hillsboro, County of Washington and State of Oregon.**

Subject  to and excepting:  Covenants, Conditions, Restrictions and Easements of record as of the date of this Deed, and additional Deed exceptions as shown on attached Exhibit "One", which is incorporated herein.

The true consideration for this conveyance is **$185,000.00** (Here comply with requirements of ORS 93.030.)

BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON TRANSFERRING FEE TITLE SHOULD INQUIRE ABOUT THE PERSON'S RIGHTS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010.  THIS INSTRUMENT DOES NOT ALLOW USE OF THE PROPERTY DESCRIBED IN THIS INSTRUMENT IN VIOLATION OF APPLICABLE LAND USE LAWS AND REGULATIONS.  BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY THAT THE UNIT OF LAND BEING TRANSFERRED IS A LAWFULLY ESTABLISHED LOT OR PARCEL, AS DEFINED IN ORS 92.010 OR 215.010, TO VERIFY THE APPROVED USES OF THE LOT OR PARCEL, TO DETERMINE ANY LIMITS ON LAWSUITS AGAINST FARMING OR FOREST PRACTICES, AS DEFINED IN ORS 30.930, AND TO INQUIRE ABOUT THE RIGHTS OF NEIGHBORING PROPERTY OWNERS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009 AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010.

Executed this 24 day of April, 2014.

Michael D. Chen

Yung-Feng Chou

State of Oregon, County of Washington   )  ss.

This instrument was acknowledged before me on this 24 day of April, 2014 by Michael D. Chen and Yung-Feng Chou.

Notary Public for Oregon
My commission expires: 1/29/17

OFFICIAL SEAL
NICOLE H BROOME
NOTARY PUBLIC-OREGON
COMMISSION NO. 475138
MY COMMISSION EXPIRES JANUARY 29, 2017

Exhibit 6
Page 1 of 2

Case 16-03046-rld   Doc 8   Filed 04/27/16

**EXHIBIT "One"**

Easement as reserved in document
For                          :    Construction, repairing and maintaining ditches or drains
Recorded                     :    December 2, 1912
Book                         :    95
Page                         :    117

Covenants, Conditions and Restrictions, including the terms and provisions thereof, but omitting any
restrictions based on race, color, religion or national origin appearing of record,
Recorded                     :    October 10, 2000
Recording No.                :    2000-082062

As modified by instrument:
Recorded                     :    February 13, 2001
Recording No.                :    2001-011610

Liens and Assessments, if any, of the Alderbrook Homeowners Association.

Covenants, Conditions and Restrictions, including the terms and provisions thereof, as shown on the
recorded plat.

Easement as shown on the plat:
For                          :    Public utilities
Affects                      :    8 feet in width along all lot lines abutting public roads

Exhibit 6
Page 2 of 2

After Recording Return To:
COBALT MORTGAGE, INC.
11241 SLATER AVE NE, SUITE 200
KIRKLAND, WASHINGTON 98033
Loan Number: 1614040201

Washington County, Oregon    **2014-023737**
D-M
Stn=5 A STROM    **04/24/2014 02:55:25 PM**
$60.00 $11.00 $5.00 $20.00    **$96.00**

I, Richard Hobernicht, Director of Assessment and Taxation and Ex-Officio County Clerk for Washington County, Oregon, do hereby certify that the within instrument of writing was received and recorded in the book of records of said county.

Richard Hobernicht, Director of
Assessment and Taxation, Ex-Officio

WFG Title 14003666 HB

—————————— [Space Above This Line For Recording Data] ——————————

# DEED OF TRUST

FHA CASE NO.
431-5891380-703

**MIN:** ▓▓▓▓▓▓▓▓0201-7                    **MERS Phone: 888-679-6377**

THIS DEED OF TRUST ("Security Instrument") is made on APRIL 23, 2014
The grantor is CHRISTINA CRESWELL

("Borrower").

The trustee is WFG NATIONAL TITLE
16100 NW CORNELL, STE 110, BEAVERTON, OREGON 97006          ("Trustee").
The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
COBALT MORTGAGE, INC., A WASHINGTON CORPORATION

("Lender")

is organized and existing under the laws of WASHINGTON
and has an address of 11241 SLATER AVE NE, SUITE 110, KIRKLAND, WASHINGTON
98033
Borrower owes Lender the principal sum of ONE HUNDRED EIGHTY-ONE THOUSAND SIX
HUNDRED FORTY-NINE AND 00/100          Dollars (U.S. $ 181,649.00          ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on MAY 1, 2044
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower

FHA OREGON DEED OF TRUST - MERS
ORDOTZ.FHA 09/06/12                    Page 1 of 9                    **DocMagic** *eForms*
www.docmagic.com

Exhibit 7
Page 1 of 10

Case 16-03046-rld    Doc 8    Filed 04/27/16

irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in WASHINGTON County, Oregon:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: R2103274

which has the address of 1452 NW 6TH AVENUE

[Street]

HILLSBORO     , Oregon      97124      ("Property Address"):

[City]      [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

FHA OREGON DEED OF TRUST - MERS
ORDOTZ.FHA 09/06/12      Page 2 of 9      **DocMagic** *EForms*
www.docmagic.com

Exhibit 7
Page 2 of 10

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless the Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

FHA OREGON DEED OF TRUST - MERS
ORDOTZ.FHA  09/06/12                              Page 3 of 9                              DocMagic *eForms*
                                                                                          www.docmagic.com

Exhibit 7
Page 3 of 10

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

  **(a) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

   (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

   (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

  **(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

   (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

   (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

  **(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

  **(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not

Exhibit 7
Page 4 of 10

paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 DAYS from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 DAYS from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply

Exhibit 7
Page 5 of 10

Case 16-03046-rld    Doc 8    Filed 04/27/16

to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall give notice of sale in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a**

Exhibit 7
Page 6 of 10

Case 16-03046-rld   Doc 8   Filed 04/27/16

foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

    **19. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as Trustee) for services rendered and charging of the fee is permitted under applicable law.

    **20. Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

    **21. Attorneys' Fees.** As used in this Security Instrument and in the Note, attorneys' fees shall include those awarded by an appellate court.

    **22. Protective Advances.** This Security Instrument secures any advances Lender, at its discretion, may make under paragraph 7 of this Security Instrument to protect Lender's interest in the Property and rights under this Security Instrument.

    **23. Required Evidence of Property Insurance.**

## WARNING

    Unless you provide us with evidence of the insurance coverage as required by our contract or loan agreement, we may purchase insurance at your expense to protect our interest. This insurance may, but need not, also protect your interest. If the collateral becomes damaged, the coverage we purchase may not pay any claim you make or any claim made against you. You may later cancel this coverage by providing evidence that you have obtained property coverage elsewhere.

    You are responsible for the cost of any insurance purchased by us. The cost of this insurance may be added to your contract or loan balance. If the cost is added to your contract or loan balance, the interest rate on the underlying contract or loan will apply to this added amount. The effective date of coverage may be the date your prior coverage lapsed or the date you failed to provide proof of coverage.

    The coverage we purchase may be considerably more expensive than insurance you can obtain on your own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by applicable law.

    **24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Condominium Rider | ☐ Graduated Payment Rider | ☐ Growing Equity Rider |
| ☒ Planned Unit Development Rider | ☐ Adjustable Rate Rider | ☐ Rehabilitation Loan Rider |
| ☐ Non-Owner Occupancy Rider | ☐ Other [Specify] | |

Exhibit 7
Page 7 of 10

Case 16-03046-rld    Doc 8    Filed 04/27/16

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 9 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_Christina Creswell_____ (Seal)          _____ (Seal)
CHRISTINA CRESWELL          -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                                         -Borrower

Witness:                                      Witness:

_____                   _____

FHA OREGON DEED OF TRUST - MERS
ORDOTZ.FHA  09/06/12                    Page 8 of 9                    DocMagic eForms
                                                                      www.docmagic.com

Exhibit 7
Page 8 of 10

——————————————— [Space Below This Line For Acknowledgment] ———————————————

State of    OREGON

County of    WASHINGTON

This instrument was acknowledged before me on    April 24, 2014

by   CHRISTINA CRESWELL

OFFICIAL SEAL
TESSA R WALSH
NOTARY PUBLIC-OREGON
COMMISSION NO. 459827
MY COMMISSION EXPIRES JULY 05, 2015

_____
Signature of notarial officer

Notary
_____
Title (and Rank)

(Seal, if any)                    My commission expires:    7-5-15

Loan Originator: ZACK DUNCAN, NMLSR ID 265104
Loan Originator Organization: COBALT MORTGAGE, INC, NMLSR ID 35653

Exhibit 7
Page 9 of 10

Case 16-03046-rld    Doc 8    Filed 04/27/16

Loan Number: 1614040201

Date: APRIL 23, 2014

Property Address: 1452 NW 6TH AVENUE
HILLSBORO, OREGON 97124

# EXHIBIT "A"

# LEGAL DESCRIPTION

**Lot 24, Alderbrook South, in the City of Hillsboro, County of Washington and State of Oregon.**

A.P.N. # : R2103274

*DocMagic eForms*
*www.docmagic.com*

Exhibit 7
Page 10 of 10

■ ■ ■ ■ ■

# GREENE ⅋ MARKLEY, P.C.

### ATTORNEYS

**1515 SW FIFTH AVENUE, SUITE 600**
**PORTLAND, OREGON 97201-5492**

TELEPHONE: (503) 295-2668
FACSIMILE: (503) 224-8434
E-MAIL: email@greenemarkley.com

Charles.markley@greenemarkley.com

March 15, 2016

Cal-Western Reconveyance Corporation
c/o Charles Piper, President
PO Box 767427
Roswell, GA 30076

Aurora Loan Services LLC
c/o Lehman Brothers Holdings Inc.
1271 6th Avenue, 40th Floor
New York, NY 10020

Cobalt Mortgage, Inc.
c/o Keith Tibbles, President
11241 Slater Avenue NE
Kirkland, WA 98033

Christina Creswell
1452 NW 6th Avenue
Hillsboro, OR 97124

Michael D. Chen
14509 SE Wallowa Way
Happy Valley, OR 97086

Yung-Feng Chou
14509 SE Wallowa Way
Happy Valley, OR 97086

Re:   *Arnot v. Creswell, et al*, Multnomah County,
        Oregon Circuit Court Case No. _____

Dear Sir and Madam:

This office represents Stephen P. Arnot ("Arnot") in his capacity as Chapter 7 Trustee of the bankruptcy estate of Jeffrey Ron King and Tisha Renee King (the "Debtors"), United States Bankruptcy Court for the District of Oregon, Case No. 11-30645-rld7.

It has come to our attention that the above addressees have purportedly been benefitted by certain invalid encumbrances recorded in Washington County, Oregon, to wit:

Substitution of Trustee recorded 8/11/09 in the Washington County, Oregon Official

Exhibit 8
Page 1 of 2

March 15, 2016
Page 2

Records as Instrument No. 2009-073804.

Notice of Default and Election to Sell recorded 8/11/09 in the Washington County, Oregon Official Records as Instrument No. 2009-073805.

Affidavit of Mailing recorded 12/11/09 in the Washington County, Oregon Official Records as Instrument No. 2009-107366.

Trustee's Deed recorded 7/13/10 in the Washington County, Oregon Official Records as Instrument No. 2010-053071.

Special Warranty Deed recorded 8/12/10 in the Washington County, Oregon Official Records as Instrument No. 2010-061986.

Statutory Warranty Deed recorded 4/24/14 in the Washington County, Oregon Official Records as Instrument No. 2014-023736.

Deed of Trust recorded 4/24/14 in the Washington County, Oregon Official Records as Instrument No. 2014-023737.

Mr. Arnot hereby requests the above addressees to release the above invalid encumbrances. Please communicate your consent to the release directly to this office and we will provide the release forms if you so direct.

Very truly yours,

GREENE & MARKLEY, P.C.

Charles R. Markley

CRM/ck

\G:\Clients\7885\011\L Cal-Western re encumb 3.14.16.wpd

Exhibit 8
Page 2 of 2

Case 16-03046-rld    Doc 8    Filed 04/27/16

# CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing **DECLARATION OF KEVIN H. KONO IN SUPPORT OF DEFENDANT COBALT MORTGAGE, INC.'S MOTION TO DISMISS** on:

Aurora Loan Services LLC
c/o Lehman Brothers Holdings Inc.
1271 65h Avenue, 40th Floor
New York, NY  10020

Cal-Western Reconveyance Corporation
c/o Charles Piper, President
PO Box 767427
Roswell, GA  30076

Michael D Chen
14509 SE Wallowa Way
Happy Valley, OR  97086

Yung-Feng Chou
14509 SE Wallowa Way
Happy Valley, OR  97086

Christina Creswell
1452 NW 6th Ave.
Hillsboro, OR  97124

☒ by mailing a copy thereof in a sealed, first-class postage prepaid envelope, addressed to said individual's last-known address and deposited in the U.S. mail at Portland, Oregon on the date set forth below.

Dated this 27th day of April, 2016.

By  s/ Kevin H. Kono
    Kevin H. Kono, OSB #023528
    Tim Cunningham, OSB # 100906

Of Attorneys for Defendant Cobalt Mortgage, Inc.

DWT 29424166v2 0083991-000034

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax